NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MONTVALE SURGICAL CENTER, LLC a/s/o THOMAS S., <br><br>      Plaintiff, <br><br>v. <br><br>AETNA INSURANCE COMPANY; ABC CORP. (1-10)(Said names being fictitious and unknown entities, <br><br>      Defendants. | Civil Action No. 12-cv-2874 (SDW)(MCA) <br><br><br><br>**OPINION** <br><br><br><br>May 22, 2013 |

**WIGENTON**, District Judge.

Before this Court is Defendant Aetna Health Inc.'s motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, Defendant's motion is **GRANTED**. Defendant's request for attorney's fees and costs of suit is **DENIED**.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Montvale Surgical Center, LLC ("MSC") is "an outpatient Ambulatory Surgical Center (ASC) where minimally invasive pain management and podiatry procedures are performed, having its office located at 6 Chestnut Ridge Road, Montvale, NJ[.]" (Notice of Removal, Ex. A ¶ 1.) "At all relevant times, [MSC] was an 'out of network' medical practice." (*Id.*) Aetna Health Inc. ("Aetna"), improperly pled as Aetna Insurance Company, as it pertains to this case, "served as [a] benefit provider of the group health benefit plan [for] Belle Associates, LLC." (Answer ¶ 3.) Aetna contracted with Belle Associates, LLC, the employer of subrogor Thomas

S., to provide healthcare benefits pursuant to the terms of a Small Group Health Maintenance Organization ("HMO") Point of Service ("POS") plan ("Plan") governed by the Employee Retirement Income Security Act of 1974, codified in 29 U.S.C. § 1001 et seq. (Certification of Michael C. McNamara ("McNamara Cert."), Ex. A.)

**The Plan**

The Plan states that "a claim occurs whenever a Member or a Member's authorized representative, such as a Provider . . . requests payment for services or treatments received." (McNamara Cert. Ex. A, at 32.) The Plan also establishes that when a claim is submitted, "[Aetna] will make a decision [regarding] the Member's claim." (*Id.*) The Plan defines discretion/determination/determine as "[Aetna's] sole right to make a decision or determination." (*Id.* at 13.) The Plan defines "Covered Charges" as

> Reasonable and Customary charges for the types of services and supplies described in the Covered Charges and Covered Charges with Special Limitations section of the [Plan], as applicable to Non-Network benefits. The services and supplies must be: (a) furnished or ordered by a health care Provider; and (b) Medically Necessary and Appropriate to diagnose or treat an Illness or Injury.

(*Id.* at 11.) The Plan describes medically necessary and appropriate treatment as services Aetna deems to be:

a) necessary for symptoms and diagnosis or treatment of the condition, Illness or Injury;
b) provided for the diagnosis or the direct care and treatment of the condition, Illness or Injury;
c) in accordance with generally accepted medical practice;
d) not for a Member's convenience;
e) the most appropriate level of medical care that a Member needs; and
f) furnished within the framework of generally accepted methods of medical management currently used in the United States.

(*Id.* at 16-17.) The Plan distinguishes between "Non-Covered Services and Supplies and Non-Covered Charges" stating:

2

> **THE FOLLOWING ARE <u>NOT</u> COVERED SERVICES AND SUPPLIES WITH RESPECT TO NETWORK SERVICES AND SUPPLIES, AND ARE NOT COVERED CHARGES WITH RESPECT TO <u>NON</u>-NETWORK BENEFITS UNDER THE CONTRACT**
>
> . . .
>
> **Experimental or Investigational** treatments, procedures, hospitalization, drugs, biological products or medical devices, except as otherwise stated in the [Plan].

(*Id.* at 61.) The Plan defines experimental and investigational services as those

> a) not of proven benefit for the particular diagnosis or treatment of the Member's particular condition; or
> b) not generally recognized by the medical community as effective or appropriate for the particular diagnosis or treatment of a members [sic] particular condition; or
> c) provided or performed in special settings for research purposes or under a controlled environment or clinical protocol.

(*Id.* at 14.) Regarding experimental or investigational services and supplies, the Plan also states:

> [u]nless otherwise required by law with respect to drugs which have been prescribed for treatment for which the drug has not been approved by the Food and Drug Administration (FDA), We will not cover any services or supplies, including treatment, procedures, drugs biological products or medical devices or any hospitalizations in connection with Experimental or Investigational services or supplies.
>
> We will also not cover any technology or any hospitalization in connection with such technology if such technology is obsolete or ineffective and is not used generally by the medical community for the particular diagnosis or treatment of a Member's particular condition.
>
> Governmental approval of a technology is not necessarily sufficient to render it of proven benefit or appropriate or effective for a particular diagnosis or treatment of a Member's particular condition . . . .

(*Id.* at 14.) Pursuant to the Plan, Aetna applies five criteria, only four of which are pertinent in this case, in determining whether services are experimental or investigational:

> 1. [Omitted as irrelevant]
>
> 2. Conclusive evidence from the published peer-review medial [sic] literature must exist that the technology has a definite positive effect on health

outcomes; such evidence must include well-designed investigations that have been reproduced by non-affiliated authoritative sources, with measurable results, backed up by the positive endorsements of national medical bodies or panels regarding scientific efficacy and rationale;

3. Demonstrated evidence as reflected in the published peer-reviewed medical literature must exist that over time the technology leads to improvement in health outcomes, i.e. the beneficial effects outweigh any harmful effects;

4. Proof as reflected in the published peer-reviewed medical literature must exist that the technology is at least as effective in improving health outcomes as established technology, or is usable in appropriate clinical contexts in which established technology is not employable; and

5. Proof as reflected in the published peer-reviewed medical literature must exist that improvements in health outcomes, as defined in paragraph 3, is [sic] possible in standard conditions of medical practice, outside clinical investigatory settings.

(*Id.* at 15.)

Aetna has made determinations regarding whether certain services or supplies are medically necessary, experimental and investigational, or cosmetic. (Statement of Undisputed Facts in Supp. of Def.'s Mot. Summ. J. ("Def.'s Facts") ¶ 10.) Aetna publicizes its determinations, which it updates regularly by issuing Clinical Policy Bulletins ("CPBs"). (*See id.* ¶¶ 10-11.) Aetna makes its determinations "based upon a review of outcome studies in published peer-reviewed medical literature, regulatory status of the technology, evidence-based guidelines of public health and health research agencies, evidence-based guidelines and positions of leading national health professional organizations, and other relevant factors." (*See id.* ¶ 10.) In the event of a discrepancy between a CPB and a member's benefits plan, the benefits plan governs. (*See id.* ¶ 11.)

4

CPB Number 0784 ("CPB 0784") is entitled "Blood Product Injections for Selected Indications."[1]  (*See id.* ¶ 13.)  Both the original and current versions of CPB 0784 state that Aetna considers platelet-rich plasma ("PRP") injection to be experimental and investigational when used for the treatment of tendonopathies (e.g. elbow, heel, knee, and shoulder) because its effectiveness is not yet established.  (*Id.* ¶¶ 14-15.)  "The current version of CPB 0784 indicates that it is based on 30 references, dated between 2006 and 2012."[2]  (*Id.* ¶ 17.)

**Services Rendered and Claim for Benefits**

On July 20, 2010, Dr. Rick Lambert, MD FACEP, performed a PRP injection of Thomas S.'s right shoulder at MSC.  (*See id.* ¶ 19.)  Pursuant to Current Procedural Terminology ("CPT") code 0232TRT, MSC later submitted a claim for payment of $8,500 to Aetna for Thomas S.'s procedure.  (*See id.* ¶ 20.)  MSC submitted the claim pursuant to an Assignment of Benefits purportedly executed by Thomas S.  (*See id.* ¶ 21.)  On August 2, 2010, Aetna issued a "Claim Payment" form denying payment for the PRP injection, as it determined that this procedure is not effective and is not coverable under the member's plan.  (*Id.* ¶ 22.)

**MSC's Appeals**

"On October 6, 2010, Precision Billing LLC submitted an appeal of Aetna's benefit determination on behalf of MSC."  (*Id.* ¶ 23.)  The appeal asserts that the patient has a musculoskeletal injury that has not responded to conservative treatment, and that current medical literature shows some evidence that PRP may benefit acute injuries.  (*See*

---

[1] CPB 0784 became effective on May 8, 2009, and was updated on December 23, 2010, December 29, 2011, December 18, 2012, and February 5, 2013.  (*See* Def.'s Facts ¶ 13.)
[2] Plaintiff argues that two of the references actually support the use of PRP, and the CPB fails to consider the medical efficacy of these two articles.  (Pl.'s Resp. to Def.'s Facts ¶¶ 10, 16.)

*id.* ¶ 25.) The appeal cites to a series of articles, and includes "several pages of journal articles and single-page print-outs of what appear to be medical studies, unaccompanied by any case-specific analysis." (*Id.* ¶ 24.) The appeal concluded that "PRP would be safer for the patient and the most cost effective option over surgery," however it does not address the findings referenced in CPB 0784. (*Id.* ¶¶ 26-27.)

On December 8, 2010, Aetna notified MSC that its appeal was denied. (*See id.* ¶ 29.) The denial, which was based on CPB 0784, explained that procedures determined by Aetna to be experimental or investigational are not covered by the policy. (*See id.* ¶¶ 29-30.)

On February 7, 2011, Dr. Rick Lambert issued a letter to Aetna on MSC letterhead indicating that he was appealing "the questioned medical necessity of a [PRP] injection for [his] patient [ ], and [ ] the denial of payment for stated treatment." (*Id.* ¶ 32.) The letter asserted that PRP "has been shown in current medical literature to benefit patients with chronic tendon, ligament and muscle injuries[,]" but did not cite or reference any support for this assertion. (*Id.* ¶ 33.) On May 11, 2011, Precision Billing LLC submitted an appeal on behalf of MSC, which contained no new case-specific analysis or evidence, and did not address or refute CPB 0784.[3] (*See id.* ¶¶ 34-36.) On June 6, 2011, Aetna notified MSC that its previous benefits determination was upheld. (*Id.* ¶ 37.)

This matter was originally brought in New Jersey Superior Court, Law Division in Bergen County. (*See* Notice of Removal ¶ 1.) Plaintiff's complaint alleges claims of breach of contract, promissory estoppel, negligent misrepresentation, and unjust

---

[3] Plaintiff argues that the appeal "disputed the characterization of PRP injections as experimental and investigational." (Pl.'s Resp. to Def.'s Facts ¶ 36.)

6

enrichment. (*See id.* Ex. A.) On May 14, 2012, Aetna removed the case to this Court. On February 12, 2013, Aetna moved for summary judgment arguing that: (1) its benefits determination was not arbitrary and capricious, (2) Plaintiff's state claims are preempted by ERISA, and (3) Plaintiff should be ordered to pay attorney's fees.

## II. LEGAL STANDARD

### i. *Summary Judgment*

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant, and it is material if, under the substantive law, it would affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party meets the initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *See Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). The court may not weigh the evidence and determine the truth of the matter but rather should determine whether there is a genuine issue as to a material fact. *See Anderson*, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in "a light most favorable" to the nonmoving party. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 521 (1991). The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. United States Postal Serv.*,

7

409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). If the nonmoving party "fail[s] to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

      ii.     *Denial of Benefits Under an ERISA Qualified Plan*

Denial of benefits under an ERISA plan "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where the language of the plan grants the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, courts should apply an abuse of discretion or arbitrary and capricious standard of review.[4] "Under a traditional arbitrary and capricious review, a court can overturn [a] decision of the plan administrator only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Doroshow v. Hartford Live and Acc. Ins. Co.*, 574 F.3d 230, 234 (3d Cir. 2009). The scope of an "arbitrary and capricious" review is narrow; "[a] court is not free to substitute its own judgment for that of the administrator in determining eligibility for plan benefits." *Id.*

The Plan in this case gives the administrator discretionary authority to determine eligibility under the plan. (*See* McNamara Cert., Ex. A, at 13.) Plaintiff does not dispute this; therefore, the Court will use the "arbitrary and capricious" standard of review.

---

[4] With respect to examining a denial of benefits under an ERISA plan, the abuse of discretion standard is identical to the arbitrary and capricious standard. *See Estate of Schwing v. Lilly Health Plan*, 562 F.3d 522, 526 n.2 (3d Cir. 2009), *cert. denied*, 131 S. Ct. 1048 (2011) (citing *Abnathya v. Hoffman-LaRoche, Inc.*, 2 F.3d 40, 45 n.4 (3d Cir. 1993)).

8

### III. DISCUSSION

#### a. Benefits Determination

Aetna argues that summary judgment is appropriate because it properly exercised its discretion in relying on the language of the Plan and CPB 0784 to determine that PRP is "experimental and investigational." Contrarily, Plaintiff argues that summary judgment should be denied because extensive medical literature shows that PRP injections are accepted in the medical community, thereby negating Aetna's decision that PRP injections are "experimental and investigational."

Aetna relies primarily on its CPBs in order to determine whether treatments or services are medically necessary, experimental and investigational, or cosmetic. The CPBs are based on "a review of outcome studies in published peer-reviewed medical literature, regulatory status of the technology, evidence-based guidelines of public health and health research agencies, evidence-based guidelines and positions of leading national health professional organizations, and other relevant factors." (Def.'s Facts ¶ 10.) "Both the original and current versions of CPB 0784 "detail at great length numerous clinical trials and scholarly analysis [sic] regarding various forms of 'Blood Product Injections', prominently including [PRP] injections." (*Id.* ¶ 16.) CPB 0784 concludes that there is insufficient evidence to support the use of PRP for the treatment of tendonopathies. (*See id.* ¶ 18.) Given Aetna's determination in CPB 0784, Aetna's conclusion regarding Thomas's PRP injections was not arbitrary and capricious as it was supported by substantial evidence.

##### i. Blanket Policy

Plaintiff points to Aetna's "blanket policy" of denying PRP treatment in all cases as evidence that Aetna's decision regarding Thomas S.'s treatment was arbitrary and capricious,

because Aetna did not review or consider the specific medical records of Thomas S. (*See* Pl.'s Br. 12.) Plaintiff's argument that the "blanket policy" evidences an arbitrary and capricious decision is unavailing. A similar argument was made in *Advanced Rehab., LLC v. Unitedhealth Group Inc.*, No. Civ. A. 10-cv-00263, 2011 WL 995960, at *3 (D.N.J. March 17, 2011), *aff'd*, 498 F. App'x. 173 (3d Cir. 2012). The *Advanced Rehab* court held that even accepting that denial of coverage was systematic, plaintiffs did not demonstrate that defendants' determinations were arbitrary or capricious. *See id.* at *3. A showing of systematic denial "would not be legally sufficient to rebut the plain meaning of what each plan reserves for itself to decide in the absence of some showing that the determinations made by the plan administrators was demonstrably flawed." *Id.*

> b. *State Law Claims*

Defendant argues that Sections 502(a) and 514(a) of ERISA preempt Plaintiff's state law claims for breach of contract, promissory estoppel, negligent misrepresentation, and unjust enrichment. (*See* Def.'s Br. 19-21.) Plaintiff does not oppose Aetna's argument.

Section 514(a) of ERISA states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 4(a)." 29 U.S.C. § 1144(a) (West 2006). This preemption applies both to "'state laws specifically designed to affect employee benefits plans'" and to "'common law causes of action' related to said plans." *Montvale Surgical Ctr., LLC*, 2013 WL 1163509 at *4 (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47-48 (1987). Since the state law claims involve the administration of benefits under the Plan, they are expressly preempted by Section 514(a).

Accordingly, since Plaintiff's state law claims are preempted by Section 514(a), this Court need not address Aetna's preemption argument under Section 502(a). *See Montvale Surgical Ctr., LLC*, 2013 WL 1163509 at n. 9.

   *c. Costs and Attorney's Fees*

Under ERISA, a court has discretion to award costs and attorney's fees to either party. *See* 29 U.S.C. § 1132(g) (West 2009). The Supreme Court has held that these fees can be awarded to any party that has achieved "'some degree of success on the merits.'" *Hardt v. Reliance Standard Life Ins. Co.*, 130 S.Ct. 2149, 2158 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)). Once this standard is met, a district court should consider five policy factors in determining whether to award costs and fees: "(1) the offending parties' culpability or bad faith; (2) the ability of the offending parties to satisfy an award of attorney[s]' fees; (3) the deterrent effect of an award of attorneys' fees [against the offending parties]; (4) the benefit conferred upon members of the pension plan as a whole; and (5) the relative merits of the parties' positions." *Fields v. Thompson Printing Co., Inc.*, 363 F.3d 259, 275 (3d Cir. 2004) (citing *Ursic v. Bethlehem Mines*, 719 F.2d 670, 673 (3d Cir. 1983).[5] District courts are required to consider and analyze these factors in order to permit appropriate review of district court decisions on appeal. *See id.* (citing *Anthuis v. Colt Indus. Operation Corp.*, 971 F.2d. 999, 1011 (3d Cir. 1992)). "[T]he *Ursic* factors are not requirements in the sense that a party must demonstrate all of them in order to warrant an award of attorney's fees, but rather they are elements a court must consider in exercising its discretion." *Fields* at 275. "A conclusory statement that one of the factors has not been fulfilled is not enough to discharge the District Court's responsibility to explain its reasoning." *Id*.

---

[5] These five factors are known as the *Ursic* factors.

Before examining the *Ursic* factors, it is important to note that the parties' arguments on this issue are very limited. Aetna only addresses the first factor, simply stating that Plaintiff should have known that Aetna's benefits determination was not "arbitrary and capricious" in light of CPB 0784, and that Plaintiff knew that it submitted no new substantial evidence to rebut this discretionary decision. Aetna does not address the other four factors. Plaintiff does not contest the request for costs and fees at all.

### i. Culpability or Bad Faith

"[B]ad faith normally connotes an ulterior motive or sinister purpose." *McPherson v. Employees' Pension Plan of American Re-Insurance Co., Inc.*, 33 F.3d 253, 256 (3d Cir. 1994) (citing *Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3d Cir. 1986)). Case law instructs that

> "culpable conduct is commonly understood to mean conduct that is 'blameable; censurable; . . . at fault; involving the breach of a legal duty or the commission of a fault . . . . Such conduct normally involves something more than simple negligence . . . . [On the other hand, it] implies that the act or conduct spoken of is reprehensible or wrong, but not that it involves malice or a guilty purpose.'"

*Id.* at 256-57 (internal quotations omitted).

Plaintiff did not exhibit any bad faith or culpability in bringing this lawsuit. Plaintiff believes that there is evidence purporting to show that PRP injections are "medically necessary," and that Aetna's denial of benefits based on CPB 0784 was therefore "arbitrary and capricious." "A party is not culpable merely because it has taken a position that did not prevail in litigation." *Id.* at 257. Therefore, the first *Ursic* factor weighs against awarding fees.

### ii. Ability to Pay

Neither party addresses whether Plaintiff has the ability to pay attorney's fees. In the absence of any facts to the contrary, and based on the nature of Plaintiff's business, it is likely that Plaintiff has the ability to pay. Therefore, the second *Ursic* factor weights in favor of awarding attorney's fees.

### iii. Deterrent Effect of a Fee Award

The Parties here have not addressed this third factor. However, this Court's finding that Aetna is not an offending party obviates the need to analyze the third *Ursic* factor. Accordingly, the third *Ursic* factor weighs against awarding fees.

### d. Benefit Conferred on Plan Members as a Whole

This factor is inapplicable to the instant matter.

### e. Relative Merits of the Parties' Positions

"[C]oncerning the relative merits of the parties' positions, [a court] must determine whether the losing party's position [was] substantially justified and taken in good faith, or was that party simply out to harass its opponent?" *Teamsters-Employers Local 945 Pension Fund v. Waste Mgmt. of New Jersey Inc.*, Civ. No. 11-902, 2011 WL 3417890 at *3 (D.N.J. Aug. 3, 2011) (internal quotations omitted). As with the first factor, Plaintiff's position was justified and was taken in good faith. Therefore, the fifth *Ursic* factor weighs against awarding fees.

Since factors one, three, and five all weigh against awarding fees, this Court holds that Aetna is not entitled to attorney's fees or costs of suit.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion for Summary Judgment is **GRANTED**. Defendant's request for attorney's fees and costs is **DENIED**.

                                                                  s/Susan D. Wigenton, U.S.D.J

Orig: Clerk
Cc: Madeline Cox Arleo, U.S.M.J.
      Parties